No. 21-12835

# United States Court of Appeals for the Eleventh Circuit

―――――――――――――――

APPLE INC.,

*Plaintiff-Counter Defendant-Appellant,*

v.

CORELLIUM, INC.,

*Defendant-Counter Claimant-Appellee.*

―――――――――――――――

On Appeal from the United States District Court for the
Southern District of Florida, No. 9:19-cv-81160-RS (Hon. Rodney Smith)

―――――――――――――――

## OPPOSITION TO PETITION FOR REHEARING AND REHEARING EN BANC

―――――――――――――――

Seth D. Greenstein
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave, NW
Suite 1300N
Washington, DC  20004
(202) 204-3514

Justin B. Levine
COLE, SCOTT & KISSANE, P.A.
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
(561) 612-3459

Kevin K. Russell
GOLDSTEIN, RUSSELL &
  WOOFTER LLC
1701 Pennsylvania Ave. NW
Suite 200
Washington, DC 20012
(202) 240-8433

*Counsel for Defendant-Appellee Corellium, Inc.*

*Apple Inc. v. Corellium, Inc.*, No. 21-12835

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant-Appellee certifies that it has no parent corporation and no publicly held corporation holds 10 percent or more of its stock.

Pursuant to Eleventh Circuit Rule 26.1-2(a) and (b), Defendant-Appellee certifies that Plaintiff-Appellant's Certificate of Interested Persons is correct with one addition:

Goldstein, Russell & Woofter LLC: Counsel for Appellee

August 14, 2023

/s/ Kevin K. Russell
Kevin K. Russell

*Counsel for Defendant-Appellee*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................................1

TABLE OF AUTHORITIES ................................................................ii

OPPOSITION TO PETITION FOR REHEARING  AND REHEARING EN BANC ....................................................................1

STATEMENT ...................................................................................1

ARGUMENT ...................................................................................4

I.   This Court's Transformative Use Analysis Is Fully Consistent With *Warhol*. ....................................................4

    A.   The Panel Considered Every Overlapping Use Apple Advanced. ................................................................7

    B.   The Panel Scrutinized Corellium's Specific Challenged Use. .....................................................................12

    C.   The Panel Did Not Rely On Corellium's Subjective Intentions Or Overstate The Degree To Which CORSEC Transformed iOS. ...........................................14

II.  The Panel's Consideration Of Commercial Use Fully Comports With *Warhol*. ..............................................15

III. The Panel Decision Does Not Threaten Copyright Protections. ...............................................................16

CONCLUSION ..............................................................................19

# TABLE OF AUTHORITIES[*]

## Cases

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith,
143 S. Ct. 1258 (2023) .................................................................. passim

Assessment Techs. of WI, LLC v. WIREdata, Inc.,
350 F.3d 640 (7th Cir. 2003) ............................................................. 6

Atari Games Corp. v. Nintendo of Am. Inc.,
975 F.2d 832 (Fed. Cir. 1992) .......................................................... 6

*Authors Guild v. Google, Inc.,
804 F.3d 202 (2d Cir. 2015) ....................................................... 5, 9, 17

Bateman v. Mnemonics, Inc.,
79 F.3d 1532 (11th Cir. 1996) .......................................................... 6

Campbell v. Acuff-Rose Music, Inc.,
510 U.S. 569 (1994) .......................................................... 10, 11, 16

*Google LLC v. Oracle Am., Inc.,
141 S. Ct. 1183 (2021) ..................................................... 6, 7, 12, 13, 14

Lexmark Int'l, Inc. v. Static Control Components, Inc.,
387 F.3d 522 (6th Cir. 2004) ............................................................. 6

Sega Enters. Ltd. v. Accolade, Inc.,
977 F.2d 1510 (9th Cir. 1992) ........................................................... 6

Sony Comput. Ent., Inc. v. Connectix Corp.,
203 F.3d 596 (9th Cir. 2000) ............................................................. 7

---

[*] Authorities upon which Defendant-Appellee primarily relies are marked with an asterisk.

## Regulations

37 C.F.R. § 201.40(b)(9) ...............................................................................3

75 Fed. Reg. 43,825 (July 27, 2010) .........................................................3

## Other Authorities

U.S. Copyright Office, *Section 1201 Rulemaking: Sixth Triennial Proceeding to Determine Exemptions to the Prohibition on Circumvention* (Oct. 2015) ....................................................................6

**OPPOSITION TO PETITION FOR REHEARING
AND REHEARING EN BANC**

Apple argues that the Supreme Court's recent decision in *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258 (2023), "has rewritten an entire body of case law" and drawn the decision in this case into question.  Br. 1 & n.2 (quoting *Hollywood Reporter* article).  Not so.  *Warhol* addressed a limited question, arising in the context of works of art, that does not arise in this case.  To the extent the Supreme Court's opinion touched upon other matters relevant to this litigation, the panel did everything *Warhol* requires and nothing it forbids.

## STATEMENT

1.  Corellium, Inc. developed a software product called "Corellium Security" (CORSEC).  The program enables users to study in detail the operating system software embedded in mobile devices, including Apple's iPhone operating system, iOS.  CORSEC allows users to run iOS files—which Apple makes available for free download on the internet, without licensing restrictions—on specialized servers.  Op. 6-7.  Corellium's software provides a set of tools absent from iOS itself, such as the ability to view system calls in real time, pause operations, and modify the

1

system kernel. *Id.* 7. When used in conjunction with the iOS files Apple freely distributes, Corellium's original software allows users to gain deep understanding of how iOS works or fails to work. *Id.* 18.

CORSEC is "a poor substitute for iOS running on a real iPhone," unable to perform basic functions like making phone calls or receiving texts, while requiring bulky servers and vastly more expensive licenses. Op. 31; *see id.* 6. Instead, CORSEC is principally used in security research, which involves identifying security flaws and developing "exploits" to establish whether that flaw is serious (*e.g.*, capable of evading Apple's security measures and allowing access to the device and its data). *See* Corellium Panel Br. 7. Researchers using CORSEC have been responsible for alerting Apple and the public to numerous serious iOS vulnerabilities. *Id.* 9.

Exploits can be used for nefarious purposes (*e.g.*, for ransomware attacks) or socially beneficial ones (*e.g.*, for further security research, for law enforcement, or to "jailbreak" devices to circumvent Apple's attempt to force users to purchase apps only from Apple's proprietary app store).

*Id.* 7-9, 39.[1]  Researchers may also sell exploits to Apple (which advertises significant bounties) or disclose them to the public (which may happen when researchers conclude that Apple is not fixing the problem).  *Id.* 7. They may also sell exploits to law enforcement and national security agencies, with whom Apple refuses to cooperate in accessing locked devices in the name of protecting the privacy of its users, even suspected terrorists.  *See id.* 8-9.

Corellium vets its customers and prohibits using CORSEC for illegal purposes.  *Id.* 12.  In the past, Corellium has denied licenses to suspicious entities and terminated access for customers it suspected of using CORSEC for illegitimate ends.  *Id.* 12-13.  Apple nonetheless objects that Corellium does not require its customers to report all vulnerabilities to Apple (as Apple does in the licenses for its own developer tools).  *See* Apple Panel Br. 8, 48, 51.  Complying with that

---

[1] In 2010, over Apple's objection, the Copyright Office determined that "jailbreaking" devices to circumvent limitations that prevent consumers from installing lawfully obtained third-party applications is legal under the Digital Millennium Copyright Act and a fair use under the Copyright Act.  *See* 75 Fed. Reg. 43,825, 43,828-30 (July 27, 2010); 37 C.F.R. § 201.40(b)(9).

demand would preclude CORSEC users from making exploits available for law enforcement or national security investigations.

2.  In 2019, after unsuccessfully attempting to purchase Corellium, Apple filed this suit, alleging that CORSEC violates Apple's copyright in iOS and some of its icons and wallpapers.  Op. 6, 9.  The district court granted Corellium summary judgment under the Copyright Act's fair use defense.  *Id*. 9-11.  A panel of this Court unanimously affirmed in relevant part.  *Id*. 9-12.

## ARGUMENT

## I.    This Court's Transformative Use Analysis Is Fully Consistent With *Warhol*.

The Supreme Court granted certiorari in *Warhol* to decide whether a work of art can be transformative simply "because [it] convey[s] a different meaning or message" than the original.  143 S. Ct. at 1273.  The Court held that it cannot.  *Id*. at 1266.  Transformativeness, instead, turns on whether the "original work and a secondary use share the same or highly similar purposes."  *Id*. at 1277.  That focus is important, the Court explained, because copying "to achieve a purpose that is the same as, or highly similar to, that of the original work is more likely to

4

substitute for, or supplant, the work," diminishing the incentive to create new original works. *Id*. at 1274 (cleaned up).

This Court's decision fully comports with *Warhol*'s teachings. The panel held that CORSEC is transformative not because it "convey[s] a different meaning or message" than iOS (something Corellium never argued*),* but because "Corellium created a new product with new features" that "***serves a new purpose***," namely "augment[ing] public knowledge by making available information *about* [iOS]." Op. 20-21 (quoting *Authors Guild v. Google, Inc.*, 804 F.3d 202, 207 (2d Cir. 2015)) (emphasis added). *Warhol* embraced that view of transformative use, citing to the same Second Circuit decision as the panel. *See Warhol*, 143 S. Ct. at 1284 (explaining a work is transformative under the first fair use factor if the "purpose of the use is distinct from the original, for instance, because the use comments on, criticizes, or *provides otherwise unavailable information about the original*") (citing *Authors Guild*, 804 F.3d at 215-16) (emphasis added); *see also id.* at 1285, n.21 (copying transformative when necessary to "shed light on the work itself") (cleaned up).

5

This is consistent with the longstanding position of the Copyright Office, and the decisions of this and other circuits, that copying computer code to shed light on its operation (*e.g.*, to reverse engineer its functional aspects or for security research) is a transformative fair use. *See, e.g.,* U.S. Copyright Office, *Section 1201 Rulemaking: Sixth Triennial Proceeding to Determine Exemptions to the Prohibition on Circumvention* 300 (Oct. 2015) ("copying" computer code "to perform testing and research" is "transformative"); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1539 n.18 (11th Cir. 1996) ("[R]everse engineering may be a fair use" when necessary to "'gain access to the ideas and functional elements embodied in a copyrighted computer program[.]'") (citing *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1527-28 (9th Cir. 1992)).[2]  The Supreme Court cited one such case in *Google* as an illustration of how fair use "can help keep a copyright monopoly within its lawful bounds." 141 S. Ct. at

---

[2] *See also, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 387 F.3d 522, 537 (6th Cir. 2004); *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 644-45 (7th Cir. 2003); *Atari Games Corp. v. Nintendo of Am. Inc*., 975 F.2d 832, 843-44 (Fed. Cir. 1992).

1198-99 (citing *Sony Comput. Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 603-608 (9th Cir. 2000)).

This Court also confirmed that CORSEC has a different, transformative purpose by verifying that its sale had no material impact on Apple's incentives to create, explaining that "CORSEC does not supersede iOS," Op. 18, and that "even if it were widespread, CORSEC would not cause any substantial harm to iOS's market," *id*. 31 (applying fourth factor).

Apple nonetheless claims that the panel transgressed other rules *Warhol* created along the way to its principle holding. But the panel did nothing of the sort.

## A.  The Panel Considered Every Overlapping Use Apple Advanced.

Apple first argues that under *Warhol*, "courts applying the first fair use factor must determine whether the 'specific use alleged to infringe' the plaintiff's copyright 'share[s] substantially the same purpose' as *any* of the 'multiple ways' in which the plaintiff uses (or reasonably could use) the original work." Br. 9 (citations omitted). Apple claims that the panel violated this rule by "focus[ing] on Apple's consumer-facing use" and

ignoring "Apple's developer-facing uses of iOS." Br. 9. The Court committed no such error.

To the extent Apple suggests the panel should have ignored consumer-facing uses, it should re-read its own brief—Apple relied on iOS's consumer-facing applications at length. *See, e.g.,* Br. 24-25 (insisting that "Corellium just creates a 'virtual' device on non-Apple hardware that can be used to 'interact with [iOS]' as if the program were installed on an 'actual iPhone'") (citation omitted); *id.* 42 (claiming that "Corellium 'plans' to make its product an even more complete substitute for iPhone devices running iOS by enabling" additional features); *id.* 47 (relying on fact that "Apple sells iOS in conjunction with iPhone" to prove market harm).

To the extent Apple argues the panel failed to consider iOS's supposed developer-facing uses, it should re-read the panel's opinion. The Court addressed every argument Apple raised regarding iOS's use by developers. Start with developers' use of iOS itself. The panel fully considered Apple's claim that "[s]ecurity research is not a transformative purpose" because "security researchers have long used Apple-licensed versions of iOS to do their work." Op. 23. It concluded, however, that to

the extent researchers can try to use unaltered iOS for research,[3] that does not make research a relevant use for purposes of the transformativeness analysis. The Court pointed to the Second Circuit's decision in *Authors Guild*, where Google copied millions of works for use with its Google Books research tool. *See* Op. 20-21, 23. The Second Circuit held that use transformative because it "augmented public knowledge by making available information *about* the books." Op. 21 (quoting *Authors Guild*, 804 F.3d at 207) (cleaned up, emphasis in original); *see also* Op. 21-22 (collecting similar authorities). Claiming that one of iOS's purposes is researching iOS, the panel explained, is "like saying Google Books was not transformative because scholars could manually search books for keywords by going to the library." Op. 23.

Nothing in *Warhol* is to the contrary. Apple points to *Warhol*'s observation that "transformative use must be supported by 'some reason other than, 'I can make it better.'" Br. 15 (quoting *Warhol*, 143 S. Ct. at 1285 n.21). But the Supreme Court was simply explaining that doing a

---

[3] *But see* Corellium Panel Br. 32. Apple's felt-need to develop tools like its Security Research Device disproves its claim that security research is a purpose of ordinary, unaltered iOS. *See infra* I.B.

better job at serving *the same purpose* as the original is not transformative.  Saying that an iPhone running standard iOS can be pressed into service for research doesn't make research its purpose any more than being able to bang a nail with an iPhone means that an iPhone serves the same purpose as a hammer.

Apple argues that even if CORSEC serves a different purpose from iOS, it serves the same purpose as various developer tools Apple derived from iOS.  Br. 11.  But the panel fully considered that argument, too.  The panel explained that Apple's developer products are not the original copyrighted work but, at most, iOS *derivatives*.  Op. 32.  The panel then observed that while a copyright gives its owner a monopoly over ordinary derivative uses of the original, "the Copyright Act doesn't afford creators a monopoly over *transformative* markets."  Op. 33 (citation omitted) (collecting authorities).  So the author of *Harry Potter* has a monopoly over screen adaptions of the book, but not over parodies or literary criticism of the work.  Although a parody is derivative of the original, it is a *transformative* derivative and, therefore, outside the author's copyright.  Even if the author licenses a parody, that does not preclude others from making their own without a license.  *See Campbell v. Acuff-*

*Rose Music, Inc.*, 510 U.S. 569, 592 (1994).  This is true even though the unauthorized parodies serve the same purpose as the licensed ones.

So, too, with Apple's iOS derivatives.  If Apple's developer tools serve the same purpose as CORSEC, it is only because both serve a transformative purpose distinct from iOS, the copyrighted work.  Apple cannot triangulate its way out of the basic fact that it "doesn't have a monopoly over transformative research tools that supply information *about* its operating system."  Op. 35.

This branch of copyright law did not come up in *Warhol* because the painting of Prince served the same purpose as the original photograph (not the same purpose as some derivative of the original photograph). 143 S. Ct. at 1279-80.  Nonetheless, *Warhol* confirmed the panel's premise that copyright owners do not have a monopoly over truly transformative derivatives.  The Court noted that "an overbroad concept of transformative use . . . would narrow the copyright owner's exclusive right to create derivative works," a concern premised on the

11

understanding that copyright does not grant owners a monopoly over transformative derivative works. 143 S. Ct. at 1275.[4]

## B. The Panel Scrutinized Corellium's Specific Challenged Use.

Apple next argues that *Warhol* requires the court to focus on the alleged infringers' "specific challenged *use*." Br. 12. The panel violated that principle, Apple claims, by focusing on CORSEC's use for security research when the product can also be used for other things. *Ibid*. That criticism is unfounded as well. The panel acknowledged (Op. 24) that "customers can use CORSEC for multiple purposes," and dutifully addressed every allegedly overlapping use Apple advanced, *see id*. 18

---

[4] Because there is no relevant overlap between the purposes of iOS and CORSEC, it makes no difference to this case, but Apple is also wrong to suggest that if there is *any* overlap in purpose, "then the challenged use is not transformative" and, if the use is commercial, the first factor must be weighed against fair use. Br. 9; *see id*. 1. *Warhol* instructed that the "first fair use factor instead focuses on whether an allegedly infringing use has a further purpose or different character, *which is a matter of degree*, and the degree of difference *must be weighed against other considerations*, like commercialism." 143 S. Ct. at 1273 (emphasis added); *see also id*. at 1277 & n.8 (courts must consider "other justifications for copying" such as whether duplicated computer code was put to "use in [a] 'distinct and different computing environment" to create "new products") (quoting *Google*, 114 S. Ct. at 1203)).

(running consumer phone); *id*. 23 (conducting security research); *id*. 32-35 (developer tools). Even if CORSEC could be used for some purposes Apple has yet to identify, it would not matter unless iOS *also* served that same purpose. But Apple does not even hint at what that use might be. *See* Br. 13. And it is too late to start brainstorming now.

In any event, in *every* application, CORSEC serves the singular "higher-order purpose" of enabling users to "examine and understand both iOS itself and iOS-based applications." Op. 18, 24. While it is true that Corellium's *customers* may put the *knowledge* they acquire to various other uses, that point is irrelevant. The Copyright Act and its fair use exemption encourage the development and dissemination of knowledge without taking into account the uses to which that knowledge might be put. *See* Corellium Panel Br. 53-55. It therefore suffices that CORSEC is a tool for developing knowledge about Apple's iOS operating system, a purpose distinct and apart from that of iOS itself.

At the very least, nothing in *Warhol*—a case involving a painting and a photograph—provides any basis to reconsider the panel's analysis of the purposes of a software tool. As the panel explained, the more on-point precedent is *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021).

13

And in that case, the Supreme Court acknowledged that "Google used Java's code 'in part for the same reason that [Oracle] created those portions," yet still found that use was transformative because Google used the code to create a new "innovative tool," "'consistent with that creative 'progress' that is the basic constitutional objective of copyright itself.'" Op. 20 (quoting *Google*, 141 S. Ct. at 1203). Because the same is true of CORSEC, this Court rightly found Corellium's use transformative. *Ibid*.

## C.  The Panel Did Not Rely On Corellium's Subjective Intentions Or Overstate The Degree To Which CORSEC Transformed iOS.

Apple briefly faults the panel for supposedly relying on the subjective intent of Corellium's founders to define the software's purpose. Br. 14. But the only proof it offers is a sentence in the background section that gave the intent no legal significance (Op. 5), and one sentence of the Court's analysis, which simply said: "There's no dispute that CORSEC 'helps security researchers do their work in a way that physical iPhones just can't." Op. 18. On its face, the sentence does not rely on anyone's subjective intent—it relies on the fact that it is *undisputed* that, as an objective matter, CORSEC provides research capabilities that iOS lacks.

14

Nor did the panel erroneously decide that CORSEC serves a different purpose from iOS simply because it provides "modest alterations" to Apple's code that "make it better." Br. 15 (citation omitted). Consistent with *Warhol*, the panel focused on the *consequences* of CORSEC's alterations—and, more importantly, CORSEC's original contribution[5]—which was to create a "new product" that serves "new purposes" without "supersed[ing]" the original. Op. 20-21.

## II. The Panel's Consideration Of Commercial Use Fully Comports With *Warhol*.

Apple argues that under *Warhol*, because CORSEC is "concededly used for the same purposes as iOS," the panel should have held that its commercial nature "weighs strongly against fair use." Br. 16. That argument fails at its premise for the reasons already discussed: the two products do not serve the same purpose.

---

[5] CORSEC's ability to perform its transformative function does not arise from its modest alteration of the iOS code, but from analyzing that altered code using Corellium's own original software. *See* Op. 7. To the extent it suggests that Corellium could not make transformative use of iOS without substantially altering its code, Apple ignores the Supreme Court's example of Warhol's Campbell's soup painting, which "precisely replicates a copyright advertising logo" but is nonetheless transformative because it serves a different purpose. 143 S. Ct. at 1280 (cleaned up).

Nor did the panel contravene *Warhol*'s admonition that "the commercial character of a secondary use should be weighed against *the extent to which* the use is transformative or otherwise justified." 143 S. Ct. at 1280 n.13 (citing *Campbell*, 510 U.S. at 579-80); *contra* Br. 15-16. The panel acknowledged the same principle, citing the same source as *Warhol* did. *See* Op. 25-26 ("The more transformative the new work, the less will be the significance of other factors, like commercialism.") (quoting *Campbell*, 510 U.S. at 579). The panel then faithfully applied that teaching, acknowledging both that it had found CORSEC only "moderately transformative" and that CORSEC is a commercial product before concluding that, on balance, the "first factor favors a finding of fair use." Op. 26. Apple may not like this conclusion, but it cannot claim that the panel applied the wrong rule.

## III. The Panel Decision Does Not Threaten Copyright Protections.

Apple ends by predicting that "[u]nder the panel's decision, so long as an infringer claims to help 'supply information about' an original work, copyright owners who have seen their works copied and distributed en masse have no recourse." Br. 17. But at its core, this an objection to

16

established fair use law, not the panel opinion.[6] *Warhol* confirmed a work is transformative if it "provides otherwise unavailable information about the original." 143 S. Ct. at 1284 (citing *Authors Guild*, 804 F.3d at 215-16). The very case the Court cited to illustrate that proposition allowed millions of works to be "copied and distributed en masse" as part of the Google Book searchable database because that use, like CORSEC's, promotes the central purpose of copyright law by advancing knowledge without harming the market for the original. There is no point in granting rehearing to consider Apple's objections to Supreme Court precedent this Court cannot change.

Nor, in any event, do Apple's objections have any merit as a matter of law or policy. Driving *Warhol* was the common-sense understanding that in the real world, allowing commercial licensing of paintings that served the same purpose as the plaintiff's photograph was taking money out of the original artist's pocket, thereby diminishing her incentive to create. *See* 143 S. Ct. at 1278. For all of Apple's complaints in its petition,

---

[6] It is also a caricature of the panel's holding, ignoring all the other fair use factors and the protection they afford.

the one thing it has not claimed—because it obviously is not true—is that CORSEC has significantly injured Apple's sales or otherwise diminished its incentive to create and maintain its mobile operating system. What Apple really wants is control over the process by which the public can investigate the functioning and frailties of its technology. *See* Apple Panel Br. 51; Corellium Panel Br. 39-40. That use of a copyright to suppress the development and dissemination of knowledge is one of the risks the fair use exemption is designed to avoid.[7]

The panel opinion here is faithful to that purpose and to Supreme Court precedent, old and new. No reconsideration is warranted.

---

[7] Apple also argues (Br. 16-17) that the panel's conclusion that CORSEC served transformative purposes affected its application of the other fair use factors as well. That may be true of some factors (such as the third factor's consideration of the amount of copying, Op. 28), but it is not true of others (such as the second factor's taking into account that computer code is "primarily functional," Op. 27). Regardless, for the reasons already given, the panel properly concluded that CORSEC is transformative.

## CONCLUSION

For the foregoing reasons, the petition for rehearing and rehearing en banc should be denied.

August 14, 2023                     Respectfully submitted,

                                    /s/ Kevin K. Russell
                                    Kevin K. Russell
                                    GOLDSTEIN, RUSSELL &
                                       WOOFTER LLC
                                    1701 Pennsylvania Ave. NW
                                    Suite 200
                                    Washington, DC 20012
                                    (202) 240-8433

                                    Seth D. Greenstein
                                    CONSTANTINE CANNON LLP
                                    1001 Pennsylvania Ave, NW
                                    Suite 1300N
                                    Washington, DC  20004
                                    (202) 204-3514

                                    Justin B. Levine
                                    COLE, SCOTT & KISSANE, P.A.
                                    Esperante Building
                                    222 Lakeview Avenue, Suite 120
                                    West Palm Beach, Florida 33401
                                    (561) 612-3459

*Counsel for Defendant-Appellee Corellium, Inc.*

19

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit as set out in Fed. R. App. P. 32(a)(7), because it contains 3,602 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Circuit Rule 32-4.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point New Century Schoolbook LT Std font.


/s/ Kevin K. Russell
Kevin K. Russell

*Counsel for Defendant-Appellee*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2023, I caused the foregoing brief to be electronically filed with the U.S. Court of Appeals for the Eleventh Circuit through the Court's CM/ECF system. Parties represented by registered CM/ECF users will be served by the CM/ECF system.

/s/ Kevin K. Russell
Kevin K. Russell

*Counsel for Defendant-Appellee*